<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEVEN JEZEK, | |
| Plaintiff, | Civ. No. 10-4410 (DRD) |
| v. | **O P I N I O N** |
| MEDCO HEALTH SOLUTIONS, INC., | |
| Defendants. | |

*Appearances by:*

KARPF & KARPF, P.C.
by: Christine E. Burke, Esq.
    Ari R. Karpf, Esq.
3070 Bristol Pike
Bldg. 2, Ste. 231
Bensalem, PA 19020

   *Attorneys for Plaintiff,*

JACKSON LEWIS LLP
by: John K. Bennett, Esq.
    Michael D. Ridenour, Esq.
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960

   *Attorneys for Defendants.*

**<u>DEBEVOISE, Senior District Judge</u>**

This matter arises out of the termination of Plaintiff Steven Jezek by Defendant Medco Health Solutions, Inc. ("Medco") and the company's failure to hire him for another position. On August 26, 2010, Mr. Jezek filed a Complaint alleging unlawful retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, (unlawful termination and failure to hire) (Count One) and disability discrimination (unlawful termination) (Count Two) and retaliation (unlawful termination and failure to hire) (Count Three) under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*, and seeking damages, back pay, attorney's fees and costs, and injunctive relief.

Medco now moves for summary judgment on all of Medco's claims. For the reasons set forth below, Medco's motion is granted on Mr. Jezek's retaliation claim under the FMLA, to the extent it relates to his termination, and on his disability discrimination and retaliation claims under the NJLAD in their entirety, but denied on his retaliation claim under the FMLA to the extent it relates to Medco's failure to hire him for another position at the company.

## I. BACKGROUND

On January 20, 2006, Mr. Jezek was hired by Medco as an Account Coordinator. Carolyn Gugliemo was Mr. Jezek's manager until October 1, 2006 at which point Tiffany Cato became his manager. On April 1, 2007, Mr. Jezek received a Year End Review of his performance at Medco in 2006. The review indicated a mark of "Meets Expectations" and provided positive feedback overall, except that Mr. Jezek needed to improve his attendance and prioritization of his work assignments. Mr. Jezek agreed with this feedback.

In deposition, Mr. Jezek explained that his subpar attendance was due to his wife being ill. Specifically, in 2006, she had more than thirty pulmonary emboli that remained undiagnosed

for approximately seven months, resulting in "numerous hospitalizations and emergency room visits," including a trip to the ICU and her nearly passing away. (DX A at 101:4-12.)

On July 2, 2007, Mr. Jezek became a Senior Account Coordinator. He continued reporting to Ms. Cato until August 2, 2007, at which point Kimberly Archibald became his new manager. On March 13, 2008, Mr. Jezek received a Year End Review of his performance at Medco in 2007. The review indicated a mark of "Exceeds Expectations" and provided positive feedback. Mr. Jezek continued to have issues with his attendance due to his wife's illness; however, his review states that he "has done an exemplary job managing to stay on top of his work while balancing issues [*sic*] other challenges in his life." (DX F.)

On September 22, 2008, Mr. Jezek became an Account Manager and began reporting to Kathleen Quinn. He also reported to Mitch Scherf, head of Medco's Halliburton Account. Elizabeth Calvez, Medco's Human Resources Manager from 2007-2008, testified that her office began initiating conversations about Mr. Jezek's performance in late December 2008 and into January 2009. On January 9, 2009, Nathan Peterson became Mr. Jezek's direct supervisor, although Mr. Jezek continued to report to Mr. Scherf regarding the Halliburton Account. From late January until the middle of February 2009, Mr. Jezek continued to take days away from the office in order to take his wife to and from the hospital. He generally notified his supervisors of these absences.

Beginning in February 2009, Mr. Scherf began taking issue with Mr. Jezek's absences because they resulted in unfinished assignments and blown deadlines on the Halliburton Account. Mr. Scherf expressed to Mr. Jezek the importance of prioritizing his work and meeting deadlines via telephone and email. Mr. Peterson also began taking issue with Mr. Jezek's absences in February 2009 because "he had a trend of missing multiple days at a time in

3

January." (DX G at 17:20-22.) Both Mr. Scherf and Mr. Peterson communicated these concerns to Ms. Calvez in early March 2009.

Mr. Jezek began experiencing health problems of his own[1] in early 2009 and, on March 17, 2010, took twelve weeks leave under the FMLA. Just prior to his taking FMLA leave, Ms. Calvez reached out to Mr. Jezek to discuss the issues raised by Mr. Scherf and Mr. Peterson. Mr. Jezek responded that he was taking leave and would be in a position to discuss these concerns when he returned.

In June 2009, after nearly exhausting his FMLA leave, Mr. Jezek spoke with Ms. Calvez and another member of Medco's Human Resources Department, who asked when he would be returning to work. Mr. Jezek advised them that his doctors believed he needed further care. Thus, Medco allowed him to continue his leave under Medco's Short Term Disability program until July 19, 2009,[2] but also advised him that there was no guarantee that they could hold his job for him up to that date due to business necessity.

On June 23, 2009, after Mr. Jezek exhausted his FMLA leave, Medco posted Mr. Jezek's position and began soliciting candidates to fill it. On July 16, 2009, Medco hired Lisa Seiler to replace Mr. Jezek as an Account Manager. Shortly thereafter, Ms. Calvez informed Mr. Jezek that his position had been filled but allowed him two weeks to apply for other positions at Medco from the date that he was cleared to return to work. On July 19, 2009, Mr. Jezek submitted a return to work notice from his urologist and substance abuse treatment facility indicating that he could return to work on July 20, 2009.

---

[1] During that time, Mr. Jezek was suffering from kidney stones. The record also suggests that he battled substance abuse and Bipolar disorder.

[2] Mr. Jezek had been receiving benefits under Medco's Short Term Disability program since the beginning of his leave, in March 2009. These benefits were extended several times over the course of his leave.

Starting on July 21, 2009, Mr. Jezek applied for eighteen positions at Medco and ultimately received an interview for a position as an Installation Manager. Christian Brown of Medco's Human Resources Department was responsible for recruiting two Installation Managers and forwarded Mr. Jezek's resume to Nicholas Barone, the Hiring Manager for those positions, because he thought that Mr. Jezek would be a good candidate.

On August 5, 2009, Mr. Jezek interviewed for the Installation Manager position. He first met with Mr. Brown and Mr. Barone individually. Mr. Barone invited Mr. Jezek to interview with Chinnereth Florentino Torraco, a member of Mr. Barone's hiring team, over the phone, because she was about to go on maternity leave and was working from home. Mr. Jezek felt that his interviews with Mr. Barone and Ms. Torraco went well, although Mr. Barone later testified in deposition that he felt that Mr. Jezek was merely an average candidate.

Mr. Jezek then met with Mr. Brown for a second time, and the issue of Mr. Jezek's FMLA leave arose. Mr. Brown testified that Mr. Jezek brought up the issue of having been out on medical leave, at which point he asked whether "that medical leave would have an effect on [Mr. Jezek's] ability to perform the qualifications of the job." (DX I at 35.) In contrast, Mr. Jezek testified that Mr. Brown brought up the issue of his leave and asked "if [his] disability was over and done with" and "if [he] would be finding any reason whatsoever where [his] disability may continue." (PX A at 182-83.) According to Mr. Jezek, Mr. Brown also said that "Medco wants people that are working," doesn't "want people who are taking time off" (id. at 183), and that if Mr. Jezek felt that he would have to take leave in the future, it would affect his candidacy because Medco needed people available to work (id. at 209-10.) Mr. Jezek responded that his period of disability was over and that he would be able to perform fully as an Installation Manager. Mr. Brown concluded the interview by saying that he, Mr. Barone, and possibly one

5

other Medco employee "would collaborate" on "individual interviews," "reviewing other resumes," and "picking a candidate that would be the appropriate fit for the position." (PX A at 183.)

Shortly thereafter, Mr. Brown and Mr. Barone discussed Mr. Jezek's candidacy. Mr. Brown believed that Mr. Jezek had valuable Medco experience but ultimately felt that other candidates were a better fit for the Installation Manager position. Mr. Barone felt that Mr. Jezek "was middle of the road." (PX BB at 50.) Specifically, Mr. Barone was concerned that Mr. Jezek had only worked on smaller, less complex accounts than those he would be required to work on as an Installation Manager. Mr. Barone also spoke with Ms. Torraco, who said that she "wasn't crazy about [Mr. Jezek]." (DX at 22.) She thought he had good Medco experience but wasn't overly impressed with his client base.

Finally, Mr. Barone spoke with Mr. Scherf, whose name Mr. Jezek provided as a reference. Mr. Barone recalled Mr. Scherf saying that Mr. Jezek "was someone that was unreliable, somebody that needed a lot of help on follow up skills, [and that] client deliverables would slip under his management." (DX BB at 23.) In addition, Mr. Scherf testified that he told Mr. Barone that Mr. Jezek "was inconsistent in his job duties and his follow-through was questionable." (DX D at 33-34.)

Shortly after these discussions, Mr. Barone told Ms. Torraco and Mr. Brown that he was not going to hire Mr. Jezek for the Installation Manager position. He ultimately hired Jillian Coppolino instead.[3]

On August 7, 2009, Mr. Jezek sent Ms. Calvez an email stating that, during his interview for the Installation Manager position, he was asked whether his "recent period of disability

---

[3] The position was officially offered to Ms. Coppolino on October 15, 2009.

6

would have an impact on [his] performance in the new position"[4] and told that if he felt he "would have any periods of future disability that it would have an impact" on his candidacy. (PX FF.) Ms. Calvez responded that she would investigate. She spoke with Mr. Brown, Mr. Barone, and Ms. Torraco about their interviews with Mr. Jezek, all of whom indicated that Mr. Jezek had volunteered information about his disability and medical leave.

On August 19, 2009, Ms. Calvez called Mr. Jezek and told him that she spoke with his interviewers who said that they made no such statements to him. She also told him that the Installation manager position had been filled, that his disability played no role in his candidacy for the position, and that he was officially terminated from Medco. During that same call, Mr. Jezek told Ms. Calvez that he had applied for a number of other positions at Medco and wanted to know why he did not receive interviews for any of them. Ms. Calvez responded that she did not know why.

Later that day, Mr. Jezek called Medco's ethics hotline and recounted Mr. Brown's inquiries and statements regarding his disability and leave and their potential effect on his candidacy for the Installation Manager position.

On August 26, 2010, Mr. Jezek filed a Complaint alleging unlawful retaliation under the FMLA and NJLAD based on his termination from Medco and its failure to hire him as an Installation Manager and disability discrimination under the NJLAD based solely on his termination, and seeking damages, back pay, attorney's fees and costs, and injunctive relief in the form of requiring Medco "to promulgate and adhere to a policy prohibiting discrimination and retaliation." (Compl. ¶ A.)

---

[4] The email also noted that Mr. Jezek had been asked this same question in his interview for his promotion to Account Manager.

7

## II.  DISCUSSION

Medco now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  With respect to Mr. Jezek's retaliation claim under the FMLA, Medco argues that (1) Mr. Jezek cannot establish a prima facie case of retaliation under the FMLA; (2) it has articulated legitimate non-discriminatory reasons for its decision to terminate Mr. Jezek and not hire him for the Installation Manager position; and (3) Mr. Jezek cannot show that these reasons are pretextual.  With respect to Mr. Jezek's disability discrimination claim under the NJLAD, Medco argues that (1) Mr. Jezek does not point to evidence that gives rise to an inference of disability discrimination; and (2) Mr. Jezek cannot show that its articulated explanations for why he was not hired for the Installation Manager position are pretextual.  With respect to Mr. Jezek's retaliation claim under the NJLAD, Medco argues that there is no evidence (1) that he was engaging in a protected activity; or (2) that retaliatory animus tainted the decision not to hire him for the Installation Manager position.  Finally, Medco argues that there is no evidence of malice that supports a claim for punitive damages.

**A.     Standard of Review**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Id.  Disputes over irrelevant or unnecessary facts will not preclude granting summary judgment.

The party moving for summary judgment has the burden of showing that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, it may discharge its burden under the summary judgment standard by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In deciding whether a dispute of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

**B.     FMLA Retaliation**

The primary purposes behind the FMLA are to (1) "balance the demands of the workplace with the needs of families" and (2) "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1). The FMLA endeavors to accomplish these purposes "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3).

The FMLA contains two relatively distinct types of provisions. First, it creates a series of prescriptive substantive rights for eligible employees, often referred to as the "entitlement" or "interference" provisions which set floors for employer conduct. Callison v. City of

9

Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005). Eligible employees "shall be entitled to a total of twelve workweeks of leave during any twelve-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Following a qualified absence, the employee is entitled to be reinstated to the former position or an alternate one with equivalent pay, benefits and working conditions. 29 U.S.C. § 2614(a)(1).

Second, the FMLA provides protection against discrimination based on the exercise of these rights, often referred to as the "discrimination" or "retaliation" provisions. See 29 U.S.C. § 2615(a)(1) and (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees ... who have used FMLA leave."). Employers may not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c).

To set forth a prima facie case of retaliation, Mr. Jezek must show that "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004). Here, there is no dispute that Mr. Jezek took an FMLA leave or that he suffered adverse employment actions by not being hired for the Installation Manager position and terminated from Medco. At issue here is whether Medco's failure to hire Mr. Jezek for that position and his termination were causally related to his leave. Such a causal link may be established with direct or circumstantial evidence. The Court of Appeals has set forth two distinct burden shifting tests under the FMLA whose application depends on whether the evidence offered in support of a retaliation claim is direct or circumstantial.

      i.      ***Direct Evidence***

10

In cases where there is direct evidence of retaliatory animus, retaliation claims under the FMLA are analyzed under the framework set forth by the Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  Under that framework, when a plaintiff points to direct evidence that his FMLA leave was "substantial factor" in an adverse employment decision, "the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have" made the same decision "even if it had not considered [the FMLA leave]."  Conoshenti, 364 F.3d at 147.  "Direct evidence means evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on [the protected activity] in reaching their decision."  Id. (quoting Price Waterhouse, 490 U.S. at 277).  "One form of evidence sufficient to shift the burden of persuasion under Price Waterhouse is statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus of the type complained of in the suit."  Fakete v. Aetna, Inc., 308 F.3d 335, 339 (3d Cir. 2002) (quotations omitted).

Mr. Jezek only offers direct evidence of retaliation with respect to Medco's failure to hire him as an Installation Manager.  Specifically, he points to evidence that, during his interview for the Installation Manager position, Mr. Brown asked "if [his] disability was over and done with" and "if [he] would be finding any reason whatsoever where [his] disability may continue."  (PX A at 182-83.)  He further provides evidence that Mr. Brown told Mr. Jezek that "Medco wants people that are working," doesn't "want people who are taking time off" (id. at 183), and that if Mr. Jezek felt that he would have to take leave in the future, it would affect his candidacy because Medco needed people available to work (id. at 209-10).  These remarks could certainly allow a jury to infer that Medco placed substantial negative reliance on Mr. Jezek's taking FMLA leave in its decision not to hire him as an Installation Manager.

Medco argues that these remarks do not amount to direct evidence of retaliatory animus because there is no evidence that Mr. Brown was a decision maker in the hiring process for the Installation Manger position. While the record indicates that Mr. Barone made the final decision regarding who to hire for the Installation Manager position, Mr. Jezek points to evidence from which a jury could infer that Mr. Brown was involved in the decision making process for that position. See Glanzman v. Metropolitan Management Corp., 391 F.3d 506, 513 (3d Cir. 2004) ("Price Waterhouse itself and Fakete, our decision applying the Price Waterhouse test . . . speak alternatively of the decision maker and person involved in the decision-making process."). As the recruiter, Mr. Brown was a member of the hiring team for the Installation Manager position; he screened resumes for the position, and met with Mr. Barone and offered his opinion on Mr. Jezek's candidacy. In addition, Ms. Calvez testified that the hiring manager and recruiter make hiring decisions together for particular positions at Medco, and that Mr. Brown specifically was involved in the decision whether or not to hire Mr. Jezek for the Installation Manager position. See (PX T at 38, 80, 90-91.)

Thus, the burden shifts back Medco to show that it would have not hired Mr. Jezek for the Installation Manager position even if it had not taken his FMLA leave into account. See Conoshenti, 364 F.3d at 147. Medco offers evidence that Mr. Barone made the final decision not to hire Mr. Jezek because he did not have experience handling complex accounts and because Mr. Scherf provided negative feedback on Mr. Jezek's job performance. This is also a factual question for a jury. Consequently, Medco's motion for summary judgment on Mr. Jezek's FMLA retaliation claim for failure to hire is denied.

    ii.    *Circumstantial Evidence*

Circumstantial evidence of unlawful termination under the FMLA is demonstrated through the familiar analytical framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 (1973). Parker v. Verizon Pennsylvania, Inc., 309 Fed. App'x. 551, 555 (3d Cir. 2009). The McDonnell Douglas analysis proceeds in three stages. As applicable here, Mr. Jezek must first establish a prima facie case of discrimination under the statute. McDonnell Douglas, 411 U.S. at 802. If he succeeds in establishing a prima facie case, the burden shifts to Medco "to articulate some legitimate, nondiscriminatory reason for" Mr. Jezek's termination. Id. If Medco meets this burden, Mr. Jezek must then provide evidence that the legitimate reason offered by Medco is merely a pretext for discrimination. Id. at 804-05.

Medco argues that Mr. Jezek cannot make a prima facie case of FMLA retaliation because it was entitled under the law to terminate Mr. Jezek after he had exhausted his twelve weeks of FMLA leave. Mr. Jezek argues that he can make a prima facie case with evidence of (1) the temporal proximity between his taking FMLA leave and his termination, and (2) pretextual reasons for Medco's decision not rehire him as an Installation Manager.

The fact that Mr. Jezek was terminated shortly after he exceeded his FMLA leave cannot serve to establish a prima facie case of retaliation because Medco had the right to terminate Mr. Jezek as soon as he exceeded his twelve weeks of leave.[5] See Katekovich v. Team Rent A Car of Pittsburgh, Inc., 36 Fed. App'x. 688, 690 (3d Cir. 2002) (If the employee is not able to return

---

[5] Mr. Jezek contends that Medco terminated him not because he exceeded his FMLA leave but because he failed to get hired for another position at Medco. While Mr. Jezek was not officially terminated from Medco until after he failed to find another position at the company, the record is clear that he lost job there as an Account Manager because he had exceeded his FMLA leave, and instead of officially terminating Mr. Jezek at that time, Medco allowed him several weeks to try and find a different position at Medco so that he might remain an employee. Thus, no reasonable juror could find that Mr. Jezek lost his job for any reason other than that he exceeded twelve weeks of FMLA leave. Moreover, to hold Medco liable for giving Mr. Jezek the opportunity to remain an employee in some fashion, despite his exceeding his FMLA leave, would provide a perverse incentive for employers to immediately terminate employees for exceeding their FMLA leave who the employer otherwise may provide a similar opportunity.

to work after twelve weeks . . . the employer may terminate the employee."). To hold otherwise would impede this right.

In addition, any evidence of Medco's pretextual reasons for not hiring Mr. Jezek as an Installation Manager does not establish the necessary causal link between his FMLA leave and his termination. Such evidence only relates to Mr. Jezek's claim for retaliation for Medco's failure to hire him as an Installation Manager, not Medco's decision to terminate him. See Note 5. Moreover, there is no evidence whatsoever that those involved in the decision not to hire Mr. Jezek as an Installation Manager were also involved in the decision to terminate him. Thus, Medco's motion for summary judgment on Mr. Jezek's FMLA retaliation claim for his termination is granted.

**C.   Disability Discrimination under the NJLAD**

The NJLAD prohibits, among other things, "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person." N.J.S.A. 10:5-4.1. This prohibition extends to both actual and perceived disabilities. Rogers v. Campbell Foundry, Co., 185 N.J. Super. 109, 112-13 (App. Div. 1982), certif. denied, 91 N.J. 529 (1982). The term disabled under the NJLAD is a broad one and left largely undefined.[6] See Clowes v. Terminix Intern., Inc., 109 N.J. 575, 592 (1988) ("The statutory definition of 'handicapped' is very broad in its scope."). Thus, the evidence of

---

[6] Under N.J.S.A. 10:5-5q, "'Disability' means physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness including epilepsy and other seizure disorders, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or any mental, psychological or developmental disability, including autism spectrum disorders, resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques."

Mr. Jezek's kidney stones, substance abuse, and bipolar disorder could allow a jury to infer that he was disabled under the statute.[7]

Mr. Jezek alleges that his termination from Medco amounts to disability discrimination under the NLAD.  To make a prima facie case of disability discrimination under the NJLAD, Mr. Jezek must show that his actual or perceived disability played a role in the decision making process to terminate him[8] and that "it had a determinative influence on the outcome of that process."  Bergen Comm. Bank v. Sisler, 157 N.J. 188, 207 (1999) (quotations and citations omitted).  As with his FMLA retaliation claim, he may do so by either direct or circumstantial evidence.  Id. at 208.

### i.     *Direct Evidence*

Direct evidence of unlawful discrimination under the statute would indicate that "decisionmakers [at Medco] placed substantial reliance on an illegitimate criterion"—in this case, Mr. Jezek's actual or perceived disability—in deciding to terminate him.  Id.  Such evidence must "demonstrate not only a hostility toward [disabled employees], but also a direct causal connection between that hostility" and the adverse employment decision.  Id.  If Mr. Jezek "is able to satisfy this rigorous burden and establish a direct prima facie case that [his disability], per se, was a substantial factor in an adverse employment decision, the burden then shifts to [Medco] to show that it would have made the same decision even in the absence of the impermissible criterion."  Id.

---

[7] Moreover, the parties do not dispute whether Mr. Jezek was disabled under the NJLAD.

[8] While the parties' motion papers also address an NJLAD discrimination claim for Medco's failure to hire Mr. Jezek as an Installation Manager, in his Complaint, Mr. Jezek only alleges unlawful termination as the basis of his discrimination claim under the NJLAD.  See (Compl. ¶¶ 37-39.)

Mr. Jezek relies on the evidence offered regarding his failure to hire under the FMLA to support his disability discrimination claim under the NJLAD for his termination. As previously discussed, however, that evidence cannot support a claim for unlawful termination because there is no evidence that those involved in the decision not to hire Mr. Jezek as an Installation Manager had any involvement in the decision to terminate him. Thus, Mr. Jezek has failed to provide direct evidence to sustain a discrimination claim under the NJLAD.

>    *ii.    Circumstantial Evidence*

Circumstantial evidence of discrimination under the NJLAD is analyzed under the aforementioned McDonnell Douglas burden-shifting framework. See id. at 209. A prime facie case of discriminatory termination under the NJLAD requires a showing that (1) Mr. Jezek is a member of a protected class; (2) he was performing his job at a level that met Medco's legitimate expectations[9]; (3) he was fired; and (4) Medco sought someone else to replace him. Mogull v. CB Comm. Real Estate Grp., Inc., 162 N.J. 449, 462 (2000). Satisfying these elements is not meant to be onerous. Sisler, 157 N.J. at 210. Here, there is no dispute as to any of these elements. Thus, the burden shifts to Medco to articulate a legitimate, non-discriminatory reason for Mr. Jezek's termination.

Medco maintains that it terminated Mr. Jezek because he exceeded his twelve-week FMLA leave period, which, as previously discussed, it had every right to do. Thus, the burden shifts back to Mr. Jezek to show that this reason is a pretext for discrimination.

The evidence of pretext offered by Mr. Jezek only relates to the reasons offered by Medco regarding why he was not hired as an Installation Manager and, as previously discussed,

---

[9] This element merely requires evidence "showing that [Mr. Jezek] was actually performing the job prior to the termination." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 454 (2005).

has no bearing on his termination. Consequently, Mr. Jezek has failed to establish pretext and summary judgment in favor of Medco on his claim for disability discrimination is granted.

**D.      Unlawful Retaliation under the NJLAD**

The NJLAD prohibits employers from taking "reprisals against any person because that person has opposed any practices or acts forbidden under this act." N.J.S.A. 10:5-12d. Retaliation claims under the NJLAD are analyzed under the aforementioned McDonnell Douglas burden-shifting framework. Victor v. State, 203 N.J. 383, 408 (2010). To establish a prima facie case of retaliation under the statute, a plaintiff must show that "(1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence." Id.

Mr. Jezek claims that Medco unlawfully retaliated against him for informing Ms. Calvez of Mr. Brown's discriminatory comments during his interview for the Installation Manager position by (1) not hiring him as an Installation Manager and (2) terminating his employment. The Court will address each alleged form of retaliation.

*i.      Failure to Hire*

Mr. Jezek has produced sufficient evidence to make a prima facie case of retaliation regarding Medco's failure to hire him as an Installation Manager. As previously discussed, Mr. Jezek was disabled under the NJLAD and therefore a member of a protected class. He engaged in a protected activity by emailing Ms. Calvez regarding Mr. Brown's discriminatory comments during his interview for the Installation Manager position, which Ms. Calvez investigated by discussing Mr. Jezek's grievance with the hiring team for that position. Shortly thereafter, Medco did not hire him as an Installation Manager position and terminated his employment.

17

Finally, Mr. Brown asking "if [Mr. Jezek] disability was over and done with" and "if [he] would be finding any reason whatsoever where [his] disability may continue" (PX A at 182-83) and stating that "Medco wants people that are working," doesn't "want people who are taking time off" (id. at 183), and that if Mr. Jezek felt that he would have to take leave in the future, it would affect his candidacy because Medco needed people available to work (id. at 209-10), combined with the fact that Mr. Jezek's rejection occurred less than two weeks after emailing Ms. Calvez regarding these remarks and inquiries, provides a sufficient causal link between the protected activity and the retaliation. See Young v. Hobart West Grp., 385 N.J. Super. 448, 467 (App. Div. 2005) ("[W]here the facts of the particular case are [] unusually suggestive of retaliatory motive [] temporal proximity, on its own, [may] support an inference of causation" (quotation and citation omitted)).

Thus, the burden shifts to Medco to offer a legitimate, non-discriminatory reason for its failure to hire Mr. Jezek as an Installation Manager.  As with Mr. Jezek's other failure to hire claims, Medco maintains that Mr. Jezek was not hired as an Installation Manager because he was a middle of the road candidate for the position and Mr. Barone received negative feedback from Mr. Scherf about Mr. Jezek's prior performance at Medco.

Accordingly, the burden shifts back to Mr. Jezek to show that this reason is "merely a pretext for discrimination and not the true reason for the employment decision." Henry v. New Jersey Dept. of Human Servs., 207 N.J. 320, 332 (2010) (quotation omitted).  To do so, Mr. Jezek "must show that the employer's reason was both false and motivated by discriminatory intent." Id. (quotation omitted).  Mr. Jezek has failed to satisfy this burden.  He merely presents evidence of the temporal proximity between his email to Ms. Calvez and when he was notified that he was not being hired as an Installation Manager.  While this helps establish a prima facie

18

case of retaliation, it does not tend to show that Medco's legitimate non-discriminatory reason was either false or a pretext for discrimination. Thus, Medco's motion for summary judgment on Mr. Jezek's retaliation claim under the NJLAD for failure to hire is granted.

### ii.     *Termination*

Mr. Jezek has failed to make a prima facie case of retaliation under the NJLAD for his termination. As previously discussed, Medco had the right to terminate Mr. Jezek as soon as he exceeded his FMLA leave period, and it relieved him of his Account Manager position shortly after doing so (and before Mr. Jezek complained about Mr. Brown's discriminatory remarks to Ms. Calvez). That Medco allowed Mr. Jezek several weeks to apply for other positions within Medco before officially terminating him from the company cannot create a causal link to sustain a retaliation claim under the NJLAD in this case. See Note 5. Consequently, Medco's motion for summary judgment on Mr. Jezek's retaliation claim under the NJLAD for his termination is granted.

### E.     Punitive Damages

Medco seeks summary judgment on Mr. Jezek's claim for punitive damages. Mr. Jezek's surviving claim is under the FMLA for failure to hire. "Punitive damages are unavailable under the FMLA." Santosuosso v. NovaCare Rehabilitation, 462 F. Supp. 2d 590, 600-01 (D.N.J. 2006). Accordingly, Medco's motion for summary judgment on Medco's claim for punitive damages is granted.

### III.  CONCLUSION

For the foregoing reasons, Medco's Motion for Summary Judgment is GRANTED on Mr. Jezek's claims for retaliation under the FMLA for unlawful termination, discrimination under the NJLAD, retaliation under the NJLAD, and punitive damages, but DENIED with

respect to Mr. Jezek's retaliation claim under the FMLA for failure to hire. Counts Two and Three of Mr. Jezek's Complaint are dismissed in their entirety with prejudice, while Count One is dismissed with prejudice only with respect to Mr. Jezek's claim for unlawful termination.

The Court will enter an order implementing this opinion.


                                                **/s/ Dickinson R. Debevoise**
                                                DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: January 24, 2012